UNITED LACE & BRAID MFG. CO. v. BARTHELS MFG. CO.

(District Court, E. D. New York. February 9, 1915.)

1. TRADE-MARKS AND TRADE-NAMES ☞1—NATURE OF "TRADE-MARK."

A "trade-mark" is a distinctive mark of authenticity, through which the products of a particular manufacturer may be distinguished from others.

[Ed. Note.—For other case, see Trade-Marks and Trade-Names, Cent. Dig. §§ 1, 3; Dec. Dig. ☞1.

For other definitions, see Words and Phrases, First and Second Series, Trade-Mark.]

2. TRADE-MARKS AND TRADE-NAMES ☞3—NAMES SUBJECT TO APPROPRIATION —DESCRIPTIVE WORDS.

As the office of the trade-mark is to point out distinctively the origin or ownership of the articles to which it is affixed, no sign or form of words can be appropriated which, from the nature of the fact conveyed by its primary meaning, others may employ with equal truth and with equal right for the same purpose; and hence words which are merely descriptive of the character or quality of the product cannot be exclusively appropriated.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. ☞3.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. TRADE-MARKS AND TRADE-NAMES ⟐⟿93—INFRINGEMENT—SUFFICIENCY OF EVIDENCE.

Where the trade-mark adopted by a party is a word never before in use, and meaningless except as indicating by whom the goods in connection with which it is used were made, there can be no conceivable purpose in its use by another person except to deceive; and mere proof that the trade-mark has been appropriated by another person entitles the owner of the trade-mark to an injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. ⟐⟿93.]

4. TRADE-MARKS AND TRADE-NAMES ⟐⟿3—UNFAIR COMPETITION—USE OF WORDS HAVING SECONDARY SIGNIFICATION.

Words forming part of the common stock of language may acquire in trade a secondary signification, differing from their primary meaning, and become so far associated with the goods of a particular maker that it is capable of proof that the use of them by another, without explanation or qualification, would deceive a purchaser; and when such words are used to persons in the trade, who will understand them and are intended to understand them in their secondary sense, though they may be true in their primary sense, relief will be awarded against such unfair competition, by requiring the use of the words to be confined to their primary sense by such limitations as will prevent misapprehension upon the question of origin.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. ⟐⟿3.]

5. TRADE-MARKS AND TRADE-NAMES ⟐⟿93—UNFAIR COMPETITION—SUFFICIENCY OF EVIDENCE.

In such case, however, mere proof of the use by another of such mark or word will not in itself entitle complainant to relief, and he must further prove that the mark or word was used by defendant under such circumstances or in such manner as to pass off his goods as the goods of complainant, and must make out such circumstances as will show a wrongful intent in fact, or justify that inference from the inevitable consequences of the act complained of.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. ⟐⟿93.]

6. TRADE-MARKS AND TRADE-NAMES ⟐⟿59—INFRINGEMENT—IMITATION OF TRADE-MARK.

Complainant's unregistered trade-mark "Beaded," as applied to a patented shoe lace tip, was infringed by defendant's use of the words "Nubeaded," "Nu-B-Ded," and "Nubded," as such words, however spelled or hyphenated, were mere colorable imitations of plaintiff's trade-mark; the prefix "new" not avoiding an infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. ⟐⟿59.]

7. TRADE-MARKS AND TRADE-NAMES ⟐⟿3—NAMES SUBJECT TO APPROPRIATION—DESCRIPTIVE WORDS.

The term "beaded," as applied to a patented shoe lace tip, a portion of the sheet metal of which was forced inward from the opposite sides to lock the tip to the lace, was not descriptive, so as not to be subject to appropriation as a trade-mark, where, though it was somewhat suggestive of the appearance of the tips, the tips were properly described as corrugated or crimped, and did not resemble a string of beads, and were made as they were for purposes of utility, and not for ornament, as a trade-mark may be suggestive, if it leaves open to every one all words that are really descriptive.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. ⟐⟿3.]

8. TRADE-MARKS AND TRADE-NAMES ☞25½ New, vol. 6 Key-No. Series—USE
OF MORE THAN ONE TRADE-MARK.

A person is not necessarily limited to one trade-mark, even on the same article.

9. TRADE-MARKS AND TRADE-NAMES ☞70—UNFAIR COMPETITION—ACTS CON-
STITUTING.

Even though the word "beaded," as applied to a shoe lace tip, was descriptive in its primary signification, where it had acquired a well-recognized secondary meaning through its use by complainant, and had come to refer in the trade to complainant's shoe laces, it constituted unfair competition for defendant, in connection with the sale of laces inferior in quality and cheaper in price, after imposing upon the Patent Office in securing the registration of the apparently meaningless word "Nubded," to use the word "Nu-B-Ded" in association with the statement that it was registered, and to use a white label with gold lettering; complainant commonly using a gold background with white lettering.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ☞70.]

In Equity.   Suit by the United Lace & Braid Manufacturing Company against the Barthels Manufacturing Company for infringement of trade-mark and for unfair competition.   Decree for complainant.

See, also, 217 Fed. 175.

The evidence shows that the company complainant has been continuously engaged since its incorporation in 1905 in the sale of shoe laces of superior quality. A distinctive feature of its laces from the outset was a metal tip, whereby, pursuant to letters patent No. 722,902, dated March 17, 1903, "a portion of the sheet metal of the tip is forced inward from the opposite sides to lock the same to the lace at points offset to one side and not opposite to each other," thereby securing it firmly on the lace. From the beginning the complainant has used the trade-mark or name "Beaded," or "Beaded Tip," to distinguish its product, using such designation on its labels and in advertising. By the expenditure of more than $100,000 in advertising it has built up a large business.

The defendant company is an offshoot of a shoe lace business founded by Philip Barthels at Barmen, Germany, more than 80 years ago. A branch of the business, established in Brooklyn many years ago, was incorporated in 1903, and has carried on a large business. At or about the time that the complainant entered the trade in 1905, the defendant made and sold a lace with a metal tip, which differed from the complainant's tip in that it was a plain, smooth, tapering tip, secured to the lace by two or three indentations or crimps in the metal at the top of the tip. In appearance it bore little resemblance to, and was readily distinguishable from, the complainant's tip. In 1912, however, the defendant put on the market a new lace tip, made in accordance with the specification of a patent application filed by one Wiberley, assignor to the defendant, on March 7, 1912, upon which a patent was granted in 1914. This new tip was made by tightly rolling and compressing about the end of the lace a sheet of corrugated material "having its longitudinal edges overlapping and the corrugations thereof interlocking with each other and thereby extending continuously circumferentially of the tip." The validity of this patent is not in issue in this suit. Prima facie both complainant and defendant are making their respective tips, not only rightfully, but in virtue of a patent grant. The material consideration for the present purpose is the fact that the new tip thus put on the market by the defendant in 1912 is substantially identical in appearance with the complainant's tip.

The defendant at first used the mark or name "Nubeaded" on its new product. On July 20, 1912, it applied to the Patent Office for registration of the name "Nubded" as a trade-mark for its laces, and upon its representation that such trade-mark had been continuously used by it in its business since

July 1, 1912, and that no other person or corporation had the right to use it, either in the identical form or in any such near resemblance thereto as might be calculated to deceive, registration was granted on December 29, 1912. The mark "Nubded," as it appears in its unhyphenated form in the registration, was, however, never used by the defendant on its laces. Some box labels were printed on which the mark appeared in that form, and these were used on the outside of boxes containing laces, evidently for the sole purpose of complying with the letter of the statute and securing registration. The labels on the laces inside such boxes bore the word or mark in hyphenated form, thus: "Nu-B-Ded." No labels with the word "Nubded" were printed after the registration; thereafter both laces and boxes were marked "Nu-B-Ded," in association with the words "Reg. U. S. Pat. Off."

On December 7, 1912, the complainant applied to the Patent Office for registration of its mark "Beaded," but registration was refused on the grounds that it was descriptive of character or quality and because of the defendant's prior registration of "Nubded." The applicant's subsequent request for an interference with the Barthels registration was refused, in view of the examiner's conclusion that the mark was not registrable. Thereupon the complainant instituted a proceeding for the cancellation of the defendant's registration. After a final hearing in the proceeding on March 3, 1914, the examiner of interferences adjudged on May 15, 1914, that the registration should be canceled. The decision was put on the ground that by applying for and securing registration of the apparently meaningless word "Nubded" the defendant had imposed upon the Patent Office. This determination was affirmed on appeal by both the Commissioner of Patents and the Court of Appeals of the District of Columbia.

Littlefield & Littlefield, of New York City (Eugene A. Kingman and Eliot G. Parkhurst, both of Providence, R. I., of counsel), for complainant.

Wingate & Cullen, of New York City (Arthur von Briesen and T. Ellett Hodgskin, both of New York City, of counsel), for defendant.

VEEDER, District Judge (after stating the facts as above). This is a suit for infringement of an unregistered trade-mark and for unfair competition. In trade-mark and unfair competition cases alike we have to do with the indicia of ownership, and the fundamental principle underlying both is that no person may pass off his goods as and for the goods of another and thereby work a fraud upon the public and upon his rival in trade.

[1-3] A trade-mark is a distinctive mark of authenticity through which the products of a particular manufacturer may be distinguished from others. It may be any symbol or form of words; but, since its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trade-mark which, from the nature of the fact conveyed by its primary meaning, others may employ with equal truth and with equal right for the same purpose. Hence words which are merely descriptive of the character or quality of the product cannot be exclusively appropriated as a trade-mark. Where, however, the trade-mark adopted is a word never in use before, and meaningless except as indicating by whom the goods in connection with which it is used were made, there can be no conceivable legitimate use of it by another person. His only object in employing it in connection with his goods must be to deceive. In such circumstances, therefore, mere proof that the trade-mark of one manufacturer has been thus appropriated by an-

other suffices to bring the case within the rule of prohibition and entitles the person aggrieved to an injunction.

[4, 5] But there are other cases which fall equally within the general rule where the mere use of the particular mark which has been employed by another would not of itself necessarily indicate that the person so using it was thereby inducing purchasers to believe that the goods he was selling were the goods of another. Words forming part of the common stock of language may become so far associated with the goods of a particular maker that it is capable of proof that the use of them by another, without explanation or qualification, would deceive a purchaser. A word may acquire in trade a secondary signification, differing from its primary meaning, and if it is used to persons in the trade who will understand it, and be known and intended to understand it, in its secondary sense, it will be none the less a falsehood, although in its primary sense it may be true. One who uses language which will convey to persons reading or hearing it a particular idea which is false, knowing and intending this to be the case, is not to be absolved from a charge of falsehood because in another sense, which will not be conveyed and is not intended to be conveyed, it is true. In such a case, however, mere proof of the use by another of such mark or word will not of itself entitle the complainant to relief, for this would be to give to the word full effect as a trade-mark while denying its validity as such. The complainant must prove, further, that the defendant used it under such circumstances or in such a manner as to pass off his goods as the goods of the complainant. Such circumstances must be made out as will show wrongful intent in fact, or justify that inference from the inevitable consequences of the act complained of. When this is done, relief against unfair competition will be awarded by requiring the use of the mark by another to be confined to its primary sense by such limitations as will prevent misapprehension upon the question of origin.

[6, 7] In this case the evidence shows beyond peradventure that the complainant was the originator of the term "Beaded" as applied to shoe lace tips, and that it had used the term as a trade-mark continuously from its entrance into the trade in 1905. Such use was, moreover, exclusive until the defendant also adopted it in 1912. It is equally clear that the defendant's mark, however, spelled or hyphenated, is a mere colorable imitation of the mark known by the defendant to have been appropriated and continuously used by the complainant. The prefix "new" does not avoid infringement. Royal Baking Powder Co. v. Royal, 122 Fed. 337, 58 C. C. A. 499; Janney v. Pan-Coast Ventilator & Mfg. Co. (C. C.) 128 Fed. 121. Unless, therefore, the word is of such a nature that it is not capable of appropriation as a trade-mark, it follows that the complainant has established the right to its exclusive use. The defendant asserts that it is incapable of appropriation because it is merely descriptive of the article. This was also the view of the Patent Office upon the complainant's application for registration. "Registration of the word 'Beaded' is refused," said the examiner, "as it describes the character or quality of the braid on which the mark is used. It indicates that the 'braid' is ornamented with beads."

This view seems to me to be untenable. The term "beaded" is no-

properly descriptive of the complainant's tip, which does not really resemble a string of beads, and is so made for purposes of utility, not for ornament. It is properly described as corrugated or crimped. This is conclusively shown as a fact by the evidence. In the prior patent to Hall for a similar tip (No. 733,837, of 1903) it is thus described. It is so described throughout the specification of the defendant's Wiberley patent, as well as in the complainant's Richardson patent. Prior to its adoption by the complainant, nobody had ever described similar tips by this term. Moreover, the manner in which it has been used by the complainant shows that it is used as a trade-mark, not as a description. The defendant's president admitted on the stand that he adopted "Nubeaded" as a "catchy" name.

The utmost that can be said is that the term "beaded," as applied to these tips, is somewhat suggestive of their appearance. In other words, it is used figuratively. This, however, is not enough to take it out of the range of lawful appropriation as a trade-mark. Every good trade mark is suggestive; once seen or heard, its association with the product is readily fixed in the mind. If there were no association of ideas between the two, it would require an independent effort of memory to recall the connection. It is not necessary to the validity of a trade-name that it should be utterly devoid of aptitude. It is enough that it leaves open to every one all words that are really descriptive.

[8] It is true that the issue is somewhat complicated by the fact that the complainant used for a time on some of its labels another trademark: "T–I–P." But this mark was not featured in the complainant's advertising, and the "Beaded" mark was always used in connection with it. A person is not necessarily limited to one mark, even on the same article. Capewell Horse Nail Co. v. Mooney (C. C.) 167 Fed. 575, 588. The complainant (as well as the defendant) also occasionally used labels designed to suit the taste of particular customers, in which words descriptive of quality were most prominently featured; but in such cases, also, whatever the other wording, the "Beaded" tip mark was invariably added by the complainant.

[9] Although my conclusion is, therefore, that the complainant is entitled to an injunction to restrain the infringement of its valid trademark, it appears to me to be equally plain that the complainant has made out a case of unfair competition. There can be no doubt whatever that "Beaded" tip laces had come to mean the complainant's laces in the trade. If, therefore, the word were descriptive in its primary signification, it has acquired a well-recognized secondary meaning through its use by the complainant. If a name having a two-fold significance, one generic and the other pointing to the origin of manufacture, could be availed of by another without clearly indicating that the product was his, it is obvious that the right to use the name because of its generic signification would carry with it the power to destroy the good will built up by the original appropriator, with whose goods it had become associated. Such is not the law. When the secondary meaning is established, the right to use the name is primarily vested in the original appropriator. Others may not use it at all, unless accom-

panied by such an explanation as will neutralize an otherwise false impression.

The evidence leaves no doubt in my mind of a deliberate intent by the defendant to appropriate the fruits of the complainant's advertising. If the name in question can be said to be descriptive in any true sense, it is certainly not a necessary description for any honest purpose. The defendant never used the word descriptively, but always as a trade-name. The defendant's imposition upon the Patent Office in securing registration of the apparently meaningless word "Nubded," and its subsequent use of the word "Nu-B-Ded" in association with the statement that it was registered, plainly indicate its purpose. On many of its "Nu-B-Ded" laces the defendant used a white label with gold lettering, while the complainant commonly used a gold background with white lettering. Prior to the filing of this suit the complainant made laces of a superior quality only, while the defendant makes many grades inferior in quality and cheaper in price than the complainant's laces. It appears to me idle for the defendant to argue that it is against the public interest to permit of the monopoly of a descriptive name, when the inevitable effect of allowing its use in the manner and for the purpose sought to be restrained will be the deception of the public and the filching of the complainant's trade.

Decree for the complainant in accordance with the prayer of the complaint.