Modified.

## CALIFORNIA CYANIDE CO. v. AMERICAN CYANAMID CO.

### Patent Appeal No. 2316.

Court of Customs and Patent Appeals.

May 26, 1930.

BLAND and HATFIELD, Associate Judges, dissenting.

Pennie, Davis, Marvin & Edmonds, of New York City (Dean S. Edmonds, George J. Hesselman, and Ernest H. Merchant, all of New York City, and R. K. Stevens, of Washington, D. C., of counsel), for appellant.

H. C. Bierman, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant, on June 30, 1926, made application for registration in the United States Patent Office of the coined word "Citrofume" as a trade-mark for use for fumigants, the principal use of the product being, so we understand, as an insecticide for the destruction of insects which infest citrus fruit trees. Use of the word as a trade-mark was claimed to have begun in applicant's business March 8, 1926.

Opposition to the application was made by the appellee, American Cyanamid Company, who alleged that "it believes it would be damaged by such registration," and stated its grounds of opposition to be:

"That from a date prior to the date of alleged use of the trademark sought to be registered, and continuously to the present time, the American Cyanamid Company has used the trademark 'Citrus Dust' in interstate commerce for fumigants, and that the trademark 'Citrofume' is deceptively similar thereto."

Upon being required specifically to identify the clause or clauses of the Trade-Mark Registration Act (15 USCA § 81 et seq.) upon which it relied, opposer pointed out that language of section 5 (15 USCA § 85) which reads:

"That trade-marks * * * which so nearly resemble a registered or known trade-

mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered."

No proof was taken in the case, but a stipulation of facts was entered into upon which it was agreed that the proceeding be determined. The material portions of this stipulation recite that the words "Citrus Dust" were adopted and used by opposer (appellee) first in 1923 and have been since used on labels applied to material sold for fumigation; that labels bearing the words "Aero Brand Citrus Dust" and "Cyanogas Citrus Dust," respectively, have been used on such materials; that the material is in powder form and used in the fumigation of citrus trees; that the product of applicant (appellant) is in powder form and has the same use; that the products are used in the same territory; that the term "Citrofume" was coined and adopted by applicant in the latter part of the year 1925 and applied to shipments of its products, on January 27, 1926, and March 6, 1926, being at first applied by means of a stencil and later by printed labels; that there has been wide use of the terms "Citrofume" and "Citrus Dust," respectively, by the respective parties, in the citrus fruit region of the United States and in certain foreign countries; that the advertising of opposer and appellant has been extensive and the sales of their respective products large.

It was also stipulated that an article entitled "Fumigation Checks Aphis" by a salesman of appellee might be introduced into the record; also that two certain persons, if called, would testify that "the term 'Citrofume' was coined and adopted by the Applicant, California Cyanide Company, as a trade-mark for its product because of the fact that it suggests a fumigant especially adapted for the fumigation of citrus trees."

Paragraph 7 of the stipulation reads: "The material designated 'Citrus Dust' by American Cyanamid Company and the material designated 'Citrofume' by California Cyanide Company are goods of the same descriptive properties within the meaning of the trade mark law."

It appears that the words "Citrus Dust," standing alone, have not been registered by appellee, but that they have been used as the stipulation recites, and there is one registration in the record which contains the words along with the word "cyanogas." Appellee does not, however, rely upon registration, but upon prior use of the words in the manner recited in the stipulation.

The Examiner of Interferences held that there could be no confusion in trade growing out of the use of the respective words, saying: "Confusion in trade is obviously impossible unless both symbols perform the function of indicating origin."

He further held that, as used by the opposer, the words "Citrus Dust" perform the function of descriptiveness, and, expressing the belief that this right would not be restricted by the exclusive use of the notation "Citrofume," dismissed the opposition and adjudged appellant entitled to the registration sought.

The Commissioner of Patents, upon appeal, took the view that the word "Citrofume," under the facts recited in the record, "also, would be descriptive of the goods," and reversed the decision of the Examiner. The decision of the Commissioner rested solely upon the ground that applicant's mark was descriptive of the opposer's goods, and said:

"With this view of the question at issue, it seems unnecessary to pass upon the question as to whether the mark 'Citrofume' so nearly resembles the opposer's mark 'Citrus Dust' as to be likely to cause confusion or mistake in the mind of the public."

Before us both parties contend that their respective marks are not descriptive in the sense of the statute.

It is the insistence of appellee that, although the term "Citrus Dust" is not descriptive, nevertheless appellant's word "Citrofume" so nearly resembles "Citrus Dust" as that its application to the merchandise which we think is correctly described as being in fact and in law "of the same descriptive properties" is likely to cause confusion.

Appellant insists in its brief that appellee's words "Citrus Dust" are descriptive, but that "Citrofume" is not, and that there is not such a resemblance as to cause confusion and so render the word nonregistrable under the statute.

■ We find ourselves unable to concur with the view taken by the Commissioner that the word "Citrofume" is descriptive of the goods or of the character or quality of the goods with which it is used. It is not a dictionary word, but was coined by appellant. It has no common meaning. It had no meaning whatever—indeed it did not exist—until applied to the product in question. It was not found in either common or trade language.

Since its application to the goods of ap-

pellant, the word has doubtless come to have a trade meaning. That is one trade-mark purpose. By reason of its use it may now have a common meaning in the sections where commonly used, but it was not, to our minds, descriptive of the goods in their quality or character at the time of its adoption by appellant.

Standing alone and without the explanation given in the stipulation, the first impression which many would derive as to the meaning of the word probably would be that of a product made from a citrus ingredient rather than of something to be applied to a citrus tree.

At most, we think the word is nothing more than suggestive as to the nature of the goods upon the label of which it is applied, and the law recognizes a decided distinction between suggestiveness and descriptiveness. Vide B. Altman & Co., 7 Trade Mark Reporter, 560. In that case the Commissioner of Patents very aptly said: "It may be remarked further that not only have trademarks been designed for suggestiveness since ancient times, certainly antedating all Anglo-Saxon trade-mark laws, but that the growing modern habit of using suggestive marks almost universally is based on sound reasons of public policy; the multiplication of goods and makers of similar goods, and the ease and wide extent of shipping goods to distant markets, makes it necessary that the public be assisted to fix the mark in mind and remember it, by an association of ideas."

In United Lace & Braid Mfg. Co. v. Barthels Mfg. Co., 221 F. 456, 461 (D. C. E. D. New York, 1915), the court said: "Every good trade-mark is suggestive; once seen or heard, its association with the product is readily fixed in the mind. If there were no association of ideas between the two, it would require an independent effort of memory to recall the connection. It is not necessary to the validity of a trade-name that it should be utterly devoid of aptitude. It is enough that it leaves open to every one all words that are really descriptive."

Difficulties are often encountered in determining where suggestiveness ends and descriptiveness begins, in the sense of the trade-mark laws, and it probably would not be possible to lay down a rule which would determine all cases, except in a most arbitrary manner. In any event, we shall not attempt to do so here. It seems sufficient to say that, for the reasons stated, we do not regard "Citrofume" as being descriptive in the sense

of the statute under which this proceeding is brought.

We do not deem it necessary to determine whether appellee's words "Citrus Dust" are descriptive or not. There is no challenge to appellee's right to their use, as they have been used, and no question concerning the right of use or registration of them is before us.

Appellee's use of "Citrus Dust" antedated appellant's adoption and use of "Citrofume" by some two and a half years. It is not necessary that one claiming use of a mark shall have that mark registered in order to oppose registration of another mark alleged to be nonregistrable under the statute.

In section 6 of the Trade-Mark Registration Act (15 USCA § 86) it is provided: "* * * Any person who believes he would be damaged by the registration of a mark may oppose the same by filing notice of opposition, stating the grounds therefor. * * *"

Conceding appellee's right to use the words "Citrus Dust" and to oppose appellant's application for registration in the instant proceeding, the remaining question to be determined is whether "Citrofume" bears such a resemblance to "Citrus Dust" as to cause confusion when applied to goods of the same descriptive properties.

We do not think it should be so held. The words have no similarity of sound when pronounced and no particular similarity of appearance when printed. One term consists of two common words; the other of one coined word, and the one word is not made up of syllables which cause it to look or sound like the two-word term. The concluding syllable "fume" of appellant's coined word has nothing in common in appearance or sound with "dust." The ordinary meaning of the one differs from the ordinary meaning of the other. They are not synonyms in their customary usage. The first four letters of appellee's first word "Citr" are the same as the first four letters of appellant's word, but these do not constitute dominating features in any trade-mark sense in either term. The coined word is not so made up as to cause it to resemble the normally spelled and pronounced term.

It is true that the stipulation justifies the finding that appellant coined and adopted the word "Citrofume" because it "suggests a fumigant especially adapted for the fumiga-

tion of citrus trees;" and appellee argues that this is an admission of similarity by appellant because it stipulated to this effect.

It does not seem to us to be an admission that the *words* are similar or that they resemble. It is an admission that "Citrofume" *suggests a product* which, it appears, is used for the same purpose as that for which the product labeled "Citrus Dust" is used, but this does not mean that the words themselves are stipulated to be alike, and it is the resemblance, or lack of resemblance, of the *marks,* not the use of the products which they label, with which we are here immediately concerned.

We do not regard "Citrofume" as being descriptive in the sense of the statute, nor do we think "Citrofume" and "Citrus Dust" are conflicting or confusingly similar.

The decision of the Commissioner is reversed, and appellant will be granted the registration sought.

Reversed.

BLAND and HATFIELD, Associate Judges, dissent.