Common Pleas Court of Hamilton County.

THE CINCINNATI REALTY CO. ET AL. V. ST. NICHOLAS PLAZA, INC.*

Decided February 3, 1931.

* No appeal or error proceedings were taken from this decision.

*Frost & Jacobs* and *H. J. Siebenthaler*, attorneys for plaintiffs.

*Pogue, Hoffheimer & Pogue, Wm. J. Reilly, H. E. Mau*, and *Ernst, Cassatt & Cottle*, attorneys for defendant.

STRUBLE, J.

In this action The St. Nicholas Hotel Company and The Cincinnati Realty Company, plaintiffs, are asking the court to enjoin the defendant, the St. Nicholas Plaza, Inc., from using its corporate name, and from operating its hotel under the name The St. Nicholas Plaza.

The two companys are joined as plaintiffs in this action, yet their interests are not joint but several.

They do, however, have a common interest in the subject matter of the action, and in the remedy sought, and this in Equity entitles them to sue together.

## THE FACTS.

The St. Nicholas Hotel Company filed with the Secretary of State its articles of incorporation February 13, 1888, and from about that time until 1911 operated a hotel at the southeast corner of Fourth and Race streets, Cincinnati, under the trade or business name "The St. Nicholas."

In the heyday of its existence this hotel was known far and wide as an hostelry par excellence.

About 1905 "The St. Nicholas" began to fail financially, and Edward N. Roth, its manager and a director of the St. Nicholas Hotel Company, in association with a group of prominent Cincinnatians organized the Cincinnati Real-

ty Company and began the promotion of a new hotel now known as "The Sinton" on the site of the Pike Opera House which had been destroyed by fire in February, 1903.

The Cincinnati Realty Company filed its articles of incorporation with the Secretary of State January 7, 1905. The new hotel was to be the successor of the St. Nicholas, to be operated under that name, but the name finally adopted was "The Sinton" in honor of David Sinton, the father-in-law of the late Charles P. Taft, who was largely interested in promoting the new enterprise.

The evidence is to the effect that in the near future the hotel "The Sinton" is to be re-named either "The Sinton-St. Nicholas" or "The St. Nicholas-Sinton."

Edward N. Roth manager of the St. Nicholas was one of the incorporators of the Cincinnati Realty Company, and with others of the personnel of the St. Nicholas worked with the Realty Company during the construction of its building, and the equipment of The Sinton.

The Sinton opened for business February 25, 1907, and Roth with others of the personnel of the St. Nicholas took practical charge of its management, and everywhere when possible during the construction of the building and the equipment of The Sinton and in its management incorporated St. Nicholas ideas and methods, and held "The Sinton" out and advertised it as the successor of "The St. Nicholas."

The lease of the St. Nicholas Hotel Company did not expire until 1911, and of necessity it operated its hotel "The St. Nicholas" until that time, and then it discontinued its operation—sold the property, some of it together with the good will and trade name "The St. Nicholas," it sold and transferred to the Cincinnati Realty Company, for which the Realty Company paid the sum of $25,000. From the time "The Sinton" opened up until "The St. Nicholas" closed up—the two hotels were operated in close association and the business of "The St. Nicholas" as it approached the end was increasingly diverted to "The Sinton."

Since 1911 "The St. Nicholas" has been inactive and has not exercised its corporate powers so far as concerns the operation of a hotel.

Its capital stock has been reduced to $1,250, to minimize franchise and excise taxes; and is owned by the Cincinnati Realty Company and held in the name of a trustee except five shares which are in the names of individuals that they might qualify as directors.

It appears at one time that the promoters of a new hotel asked permission of The Cincinnati Realty Company to use the trade name "The St. Nicholas" for their hotel, and at another time the promoters of an apartment building asked permission of The Cincinnati Realty Company to use the name "St. Nicholas" for their building, and the Realty Company refused both requests.

The St. Nicholas Hotel Company has had no property or visible means of support since 1911. The state, however, has been paid all franchise and excise taxes due it, and the articles of incorporation of The St. Nicholas Hotel Company remain uncancelled in the office of the Secretary of State.

### THE ST. NICHOLAS PLAZA, INC., ORGANIZED.

The promotors of the St. Nicholas Plaza, Inc., held a conference in the Gibson Hotel on or about the first of October, 1930, and agreed to adopt as their corporate name "St. Nicholas Plaza, Inc.," and to operate their hotel under the business or trade name "The St. Nicholas Plaza."

Mr. Arthur B. Walsh, Vice President of the Starrett Investing Corporation, was present at that conference and states the reasons for adopting the name "The St. Nicholas Plaza, Inc."

After concluding to form a separate corporation for the hotel he said: "I inquired of J. J. Emery of this city what he thought would be a good name for the hotel, and he told me there had been a very famous hotel here demolished a great many years ago, but the name lingered in the minds of people here with great affection, and he would like to see it revived; and I was subsequently in New York and Mr. Rentschler of Hamilton asked me what we were going to call it and he suggested St. Nicholas, and that he had been brought down here when a very

young boy by his mother and left there while she did her shopping around Cincinnati, and he thought we could not do better than to take that name; Mr. Walter Schmidt told me he had had the same name suggested by various people in Cincinnati, and that was about what we concluded to do, and Mr. Reichl came into the picture and objected to the name for fear some people might think it was the old St. Nicholas, and suggested we call it the New St. Nicholas, and we objected to that because in five years it would no longer be new, and he then suggested to call it the St. Nicholas Palace, or St. Nicholas Plaza, and still get what we were looking for, the words St. Nicholas, and that was how we ultimately took the name."

At the time of this conference it is fair to state that they did not then know that the St. Nicholas Hotel Company was still an existing corporation, nor that the Cincinnati Realty Company had purchased the good will and trade name "The St. Nicholas"; and upon inquiring at the office of the Secretary of State they were told that the name was available for their use.

This information, however, was a "slip-up" by a clerk in the office of the Secretary of State. The matter came to Mr. Taylor, executive head of the corporation department of the office of the Secretary of State, October 7, 1930, when the articles of incorporation were presented for filing.

The Articles were presented by a young lady from the law office of the Columbus attorneys of the defendant company, and when presented Mr. Taylor checked the name with the files and told her that the name was not available for use. The matter was discussed between Mr. Taylor and Mr. Vorys, Columbus attorney for the defendant company, and finally Mr. Taylor permitted the filing of the articles subject to the understanding that if there was a protest on the part of the St. Nicholas Hotel Company that there would be a change of the name of the defendant company.

The evidence shows that a few days later the attorney for the St. Nicholas Hotel Company called the office of the Secretary of State and protested against the name, and

on the 10th of October wrote a letter to the defendant company protesting against the name, and on October 30th filed a written protest on behalf of the St. Nicholas Hotel Company with the Secretary of State.

Upon the filing of the protest Mr. Taylor called Mr. Vorys, Columbus attorney for the defendant company, and told him of the filing of the protest, and as the name was not available for use demanded that the name be changed.

The defendant company has refused to comply with this demand of the Secretary of State, and is resisting this action on several grounds:

(a) That the corporate names of the two companys, "The St. Nicholas Hotel Company" and "The St. Nicholas Plaza, Inc.," are not so similar as "likely to mislead the public" and are distinguishable from each other.

(b) That The St. Nicholas Hotel Company by non-use of its corporate powers since 1911, and the Cincinnati Realty Company by the non-use of the trade name "The St. Nicholas," both have abandoned and forfeited their right to such names.

(c) That the corporate name "The St. Nicholas Plaza, Inc.," and the trade name for its hotel "The St. Nicholas Plaza," were adopted by the defendant company in good faith, and without knowledge of the claims of the plaintiffs; that it has expended a large sum of money equipping its hotel; that it would now be inequitable to deprive it of its use of such name.

THE ST. NICHOLAS HOTEL COMPANY VS. THE ST. NICHOLAS PLAZA, INC.

The controversy between these two companys is as to the right of the defendant company to use its corporate name "The St. Nicholas Plaza, Inc."

As to "conflicting names," Section 8623-5, General Code, provides:

"The secretary of state shall not file any articles if the corporate name is likely to mislead the public, nor unless the name is such as to distinguish the corporation from any other corporation authorized to do business in this state, unless the written consent of such other corpora-

tion signed by its president or a vice-president is filed with such articles."

As to when corporate existence begins, Section 8623-7, General Code, provides as follows:

"Upon the filing of the articles the incorporators and their associates, successors and assigns by the name stated therein shall, from the date of such filing, be and constitute a body corporate, with perpetual succession."

The St. Nicholas Hotel Company from February 13, 1888, the date of the filing of its articles, has held a clear title of record in the office of the Secretary of State as an existing corporation authorized to do business in this state.

This being a fact the Secretary of State had no right to file the articles of incorporation of the defendant company, if its name was "likely to mislead the public" or if it was not "such as to distinguish it from plaintiff's name —"The St. Nicholas Hotel Company."

The Secretary of State had no discretion in the matter of filing defendant's articles beyond such as given him in Section 8623-5, *supra*.

The franchise, the right of being a corporation by the name stated in the articles of incorporation, is the gratuitous favor, privilege of the state.

Corporations are creatures of the state, and must come into existence, live through their lives and pass away according to the legislative will. *Latimer* v. *Mosaic Glass Co. et al.,* 13 C. C., 163; *State ex rel Attorney General* v. *Taylor,* 25 O. S., 279.

Under the law of this state the franchise to be a corporation by the name stated in the articles cannot be bargained away, nor be questioned, nor inquired into in a collateral proceeding such as this is. (10th Ohio Jr. Section 782.)

The St. Nicholas Hotel Company is secure in its rights to be the St. Nicholas Hotel Company against all the world except the state by direct proceedings according to state law. *State ex rel Attorney General* v. *Taylor,* 25 O. S., 279.

## Non-User of Corporate Powers.

The issue between the St. Nicholas Hotel Company and the St. Nicholas Plaza, Inc., is as to the claim of a conflict in their corporate names. In the determination of this issue the corporate powers of either of these companys are not in any way involved.

Corporate names and corporate powers are entirely different matters, and yet it is to be noted that as a fact the St. Nicholas Hotel Company has been using right along its corporate name, and some of its corporate powers.

## Corporate Name.

It is co-plaintiff in this action in its own name; and the state of Ohio bills it in its own name annually for franchise and excise taxes; it files income tax returns, and filed protest to the Secretary of State and the defendant company as to use of its corporate name by the defendant company.

## Corporate Powers.

It has not exercised its powers to operate an hotel since 1911, but it has many other powers, some of which it is exercising—for example, it has the power "to sue and be sued" and it is here in court co-plaintiff in this case suing the defendant company to enjoin it from using its corporate name.

While this claim of non-user of corporate powers is only partially true—yet whatever the fact is it is of no concern in the issue as to the conflict of corporate names between these two companys.

The St. Nicholas Hotel Company being an existing corporation has about the same corporate powers as any other hotel company.

Whether it is exercising them or not is no concern of other corporations. The St. Nicholas Hotel Company could now start into the hotel business to be operated under any available name,—it could not, however, have another "St. Nicholas Hotel" because it has sold that trade name to the Cincinnati Realty Company.

## EQUITY CANNOT BE INVOKED.

The claim of the defendant company that it has expended a great deal of money in equipping its hotel under the name "The St. Nicholas Plaza" in the belief that that name was available for its use, and that to compel it to drop that name would be inequitable is without validity in this conflict as to the corporate names of these two companys. There is a difference between a corporate name and a trade or business name.

The St. Nicholas Hotel Company could not sell its corporate name, but it could and did sell to the Cincinnati Realty Company the trade or business name "The St. Nicholas" under which it operated its hotel.

If the defendant company was compelled to drop "St. Nicholas" from its corporate name, and as for example, took the name "The Queen City Plaza, Inc.," under the circumstances of this case the St. Nicholas Hotel Company could not complain if the St. Nicholas Plaza, Inc., continued to operate its hotel under the trade or business name "The St. Nicholas Plaza"; in which event there would be no loss on equipment.

The St. Nicholas Hotel Company has sold its trade name "The St. Nicholas" to the Cincinnati Realty Company, and it is the only one that can complain of the trade name under which the defendant company is running its hotel.

It is not at all rare for corporations to operate a business under a name different than its corporate name, as for example, the Cincinnati Realty Company is operating its hotel under the business name "The Sinton."

## CORPORATE NAMES OF THE TWO COMPANIES CONFLICT.

In the issue between the St. Nicholas Hotel Company and the defendant company the sole inquiries are:

Is the corporate name of the defendant company "likely to mislead the public"?

And, is its corporate name such as to "distinguish" it from plaintiff's corporate name?

If the answer to either or both of these inquiries is in the affirmative, the Secretary of State had no right to file defendant company's articles of incorporation.

### EVIDENCE AS TO CONFLICT.

Mr. E. L. Taylor, head of the corporation department of the office of Secretary of State, is of the opinion that the corporate name of the defendant company is so similar to plaintiff's corporate name that the public is likely to be mislead.

He was a witness in this case, and in a letter of his of date October 23, 1930, to the Columbus attorney of defendant company, which is in evidence and from which I quote the following:

"As you know when you first mentioned the name St. Nicholas Plaza, Inc., to me I told you that it was not available. In view, however, of your assuring me that someone in the office had previously advised you to the effect that the name was available I accepted the filing. You will recall at the time I told you that your clients would take the name subject to a possible protest. In my opinion the name is entirely too similar to that of the St. Nicholas Hotel Company and I feel that the protest is entirely justified and must ask that your clients change the name."

Mr. Taylor's testimony is not only the opinion of an expert as to the similarity of the corporate names of these two companys' but it is also conclusive of another important fact, and that is that the filing of the articles of incorporation of the defendant company by the Secretary of State was conditional on there being no protest against the use of the name by the St. Nicholas Hotel Company.

It seems quite likely that a Court of Equity in an action by the state against the defendant company to cancel the filing of its articles under the proof in this case, would order a cancellation of the filing of defendant's articles of incorporation.

Mr. Taylor, head of the corporation department of the Secretary of State, at the time of the filing of defendant's articles was charged with the duty of determining the question as to conflict in the names, and while his judgment may not be conclusive of the fact, yet it is evidence of the highest character that there is such a similarity between the names as will likely mislead the public. *Cleve-*

*land Opera Co.* v. *Cleveland Civic Opera Association,* 22 Ohio App., 400 at 409.

The other words in defendant's corporate name add no distinguishing feature to the name, as for example, Inc., is merely an abbreviation of the word "incorporated." And the word "Plaza" while technically it means an open space, yet it has a meaning analogous to the word "hotel," and it is in that sense that it is being used in defendant's name, and the public generally understands it to have that meaning in defendant's name.

Mr. Warterfield, secretary of "The St. Nicholas Plaza, Inc.," testified that the word "Plaza" in hotel parlance and circles was considered as having a meaning analogous to the word "hotel."

"St. Nicholas" is in both names, is a part of the corporate name of both of these companys, and the essential controversy is as to the use of the name "St. Nicholas."

Mr. Walsh, Vice-President of the Starrett Investing Corporation, testified that it was the name of the old hotel "The St. Nicholas" that they wanted because of the agreeable memories associated with it.

The court concludes that the use of the name "St. Nicholas" by the defendant company in its corporate name makes its name so similar to plaintiff's name that the public is likely to be mislead, wherefore, an order will be made enjoining the defendant company from the further use of "St. Nicholas" in its corporate name. *Thayer Carpet Cleaning & Rug Mfg. Co.* v. *George A. Thayer Co.,* 6 O. N. P., 300; *Cleveland Opera Co.* v. *Cleveland Civic Opera Association,* 22 Ohio App., 400; *State ex rel New Arlington Hotel Co.* v. *Hinkel,* 115 Wash., 298.

THE CINCINNATI REALTY CO. v. THE ST. NICHOLAS PLAZA, INC.

The complaint of the Cincinnati Realty Company against the St. Nicholas Plaza, Inc., is as to the use of "St. Nicholas" in its trade or business name, "The St. Nicholas Plaza" under which it operates its hotel.

The Cincinnati Realty Company claims that the defend-

ant company is purloining the trade name "The St. Nicholas" under which the St. Nicholas Hotel Company operated its hotel, and for which it paid approximately $25,000.

The proof in this case is conclusive of the fact that the defendant company has adopted the name of the old hotel "The St. Nicholas," and of the further fact that the Cincinnati Realty Company purchased the good will, including the trade name, "St. Nicholas" of the St. Nicholas Hotel Company, and paid therefor approximately $25,000.

The sole question between the Cincinnati Realty Company and the defendant company is one of property rights.

Good will of a business, which includes the trade name under which it is operated, is property in the eye of the law, and the essential function of the law is to protect the persons in the just possession of their property.

## Non-User.

The defendant company claims that the Cincinnati Realty Company by not using the name "St. Nicholas" as a part of its trade name has abandoned, or relinquished any right it may have acquired by its purchase of the name from the St. Nicholas Hotel Company.

It is hard for this court to become enthused over an argument of that sort for withholding property from one who has proven ownership thereof, and identify it in the possession of another.

This court likes the law that stretches out its strong arm and withdraws property from the wrongful possessor and gives it back to the rightful possessor.

Good will, trade names, etc., are intangible things, and there are ways they may be lost to foretime owners.

Primarily abondonment, or not, is a question of intention, and here the Cincinnati Realty Company by its acts clearly indicates a purpose to hold on to its trade name "The St. Nicholas." *Nims on Unfair Competition & Trademarks,* 3rd Ed., 1929, page 1011, Section 408; *Hopkins on Trademarks, Trade names and unfair competition,* 4th Ed., 1924, page 210, Section 93; *Saxlehner* v. *Eisner, et al.,* 179 U. S., 19; *Baglin* v. *Cusenier Co.,* 221 U. S., 580; *Beechmont Packing Co.* v. *Lorillard,* 273 U. S., 629;

*Burt* v. *Tucker*, 178 Mass., 493; *Janney* v. *Van Coast Ventilator Mfg. Co.*, 128 Fed., 121; *Julian* v. *Hoosier Drill Co. et al.*, 78 Ind., 408.

The Realty Company has not used the name "St. Nicholas" in the name of its hotel, but it has manifested a clear intention not to abandon this trade name; its promoters intended its hotel to be the successor of the St. Nicholas, and diverted business of the St. Nicholas Hotel to its hotel; took over the personnel of the St. Nicholas Hotel and infused St. Nicholas ideals and methods into the management of its hotel; advertised it as the successor of the St. Nicholas; fought off others from the use of the name; filed protests with the secretary of state, and the defendant company against its use by the defendant company, and is here in court demanding that the defendant company be made to give back its name, and is declaring its purpose in the future to make use of the name in connection with the re-naming of its hotel.

The Metropolitan Telephone & Telegraph case reported in 141 New York Supplement, page 598, is a case on all fours with the pending case, and decisive of the pending case. The court in this case had this to say:

"It is alleged, and not disputed, that the New York Telephone Company acquired all the assets, business, property rights, privileges, and franchises of the plaintiff Metropolitan Telephone & Telegraph Company, except its franchise to be a corporation. If this be so, it acquired the good will of the last named corporation; and this, according to the rule now well established, carried with it the right to use the name of the assignor corporation in connection with its own in such manner as to indicate that it is the successor of a corporation whose business and good will it has purchased. (Citing authorities.) It is of no moment, as we consider, that the New York Telephone Company has not, as yet, found it necessary, or considered it advisable so to use the name of its assignor, the Metropolitan Telephone & Telegraph Company. The point is that it acquired, and never relinquished, the right so to use it. Until some one attempted as these defendants have now attempted to appropriate the name, the corporation rightfully entitled to use it was not called upon to assert its right, and its failure to do so should not be attributed to an intention to relinquish it."

## No Basis In Equity.

There is no validity to the claim of the defendant company that it expended a great deal of money in equipping its hotel under the name "The St. Nicholas Plaza" in the belief that the name was available for its use.

While it is true that the promotors of defendant's hotel at the time they selected the name did not know of the claims of the plaintiffs, but they did know of these claims before there had been any considerable expenditure of money for equipment.

The H. & S. Pogue Company was employed as purchasing agents for the equipment October 3, 1930; the first purchases were made on October 22, 1930, except linens, which were purchased before this time. But the linens were not ordered stamped with the name "St. Nicholas Plaza" until October 13, 1930.

The defendant company filed its articles of incorporation with the Secretary of State October 7, 1930, and a few days later the defendant company was notified by the St. Nicholas Hotel Company that it objected to the corporate name of the defendant company. And from this time until the filing of the petition in this case, November 7, 1930, the matter of the corporate name adopted by the defendant company was under discussion between counsel for the two companys.

Immediately after filing the petition in this case an application was made to the court for a temporary order against the defendant company using the name "St. Nicholas." The question of expenditures for equipment was discussed during the argument on this application for a temporary order; the court refused the temporary order, but stated at the time if the defendant company went on expending money for equipment it would do so at its own risk.

The conclusion of the court is that the Cincinnati Realty Company is the owner of the trade name "The St. Nicholas," and is entitled to have the defendant company enjoined from the further use of this name "St. Nicholas" as a part of its trade name "The St. Nicholas Plaza." *Mack* v. *St. Francis Hotel Co.*, 51 Wash., 375.