### GLOBE–WERNICKE CO. v. BROWN et al.

(Circuit Court, W. D. Pennsylvania. February 19, 1903.)

#### No. 17.

1. TRADE-MARKS—DESCRIPTIVE CHARACTER OF WORD—"ELASTIC" AS APPLIED TO SECTIONAL BOOKCASES.

The word "Elastic" is not aptly descriptive of bookcases or filing cabinets constructed in sectional parts, so that their size may be increased or diminished by adding or taking away sections, but is at most only suggestive of such feature, which does not preclude its appropriation as a trade-mark by the manufacturer of such articles to identify the goods of its manufacture.

2. SAME—UNFAIR COMPETITION.

The word "Elastic" *held*, under the evidence, to have been used for such length of time by plaintiff as to have acquired a secondary meaning in the trade and with the general public as identifying sectional bookcases, and similar articles of its manufacture, and to entitle it to protection against the use of such word in connection with the goods of other manufacturers, even if not valid as a technical trade-mark.

In Equity. Sur pleadings and proofs.

¶ 1. Arbitrary descriptive or fictitious character of trade-marks and trade-names, see note to 50 C. C. A. 323.

¶ 2. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

Taggart, Denison & Wilson and C. S. Crawford, for complainant.
J. S. & E. G. Ferguson, for defendants.

ACHESON, Circuit Judge. By stipulation the parties have agreed that the court shall consider this case on bill, answer, and affidavits ex parte plaintiff and defendants as upon final hearing. The suit is by the Globe-Wernicke Company, a corporation of the state of Ohio, against Clarence B. Brown and James I. Rees, citizens of the state of Pennsylvania, to restrain the defendants, who are retail dealers in furniture, from using in their business the word "Elastic" in connection with bookcases and similar furniture, not manufactured by the plaintiff.

The bill avers and the proofs show the following facts: The Wernicke Company, the plaintiff's predecessor in business, about May 1, 1894, engaged in the business of manufacturing and selling sectional bookcases and similar furniture, constructed in separate sections, so that the sections can be put together in different forms and shapes, and arranged in one or several distinct structures, and rearranged. The Wernicke Company was the first to put upon the market and introduce to the public any bookcase or similar article of furniture having these characteristics. The said company, on or about May 1, 1894, adopted as a trade-mark and distinguishing name for such bookcases and like furniture the word "Elastic," and thereafter and continuously it and its successor in business, the plaintiff company, have used that word as a trade-mark by stamping or impressing it on all sections of bookcases and similar articles manufactured and sold by them, and by imprinting the word upon the letterheads and stationery and catalogues and advertising matter of all kinds used in connection with such business. On May 11, 1897, the Wernicke Company caused this trade-mark to be registered in the United States Patent Office, and a certificate of registration therefor was duly issued. On or about August 1, 1899, the Wernicke Company sold and transferred its entire business and all rights and interests appertaining thereto, including the exclusive right to use the said trade-mark, to the plaintiff company. The plaintiff has built up and is conducting a large and extensive business in its sectional bookcases and similar furniture under the name of "Elastic." The defendants are engaged in the business of selling office furniture in the city of Pittsburg, and have been offering for sale and selling sectional bookcases and filing cabinets under the name of "Elastic," and have been advertising the same as "Elastic" bookcases and "Elastic" filing cabinets, although the same are not in fact of the plaintiff's manufacture.

The defendants insist that the word "elastic" could not be appropriated as a trade-mark for such sectional bookcases or similar furniture, because it is merely descriptive of the articles. The argument is based on the fact that the size of such a sectional article may be increased or diminished by adding to or taking from it some pieces. But this peculiarity is by no means aptly represented by the word "elastic." The primary meaning of this word (as defined by Webster) is, "having a power or inherent property of returning to the

form from which a substance is bent, drawn, pressed, or twisted." This is the common acceptation of the word "elastic." Certainly a sectional bookcase or other like article of furniture does not have the capability of spontaneously returning to a former size or shape. In no true sense is such an article elastic. The Century Dictionary and other authorities, indeed, give to the word "elastic" the secondary meaning of "admitting of extension," "capable of expanding or contracting according to circumstances," but such use of the word is figurative, the illustrations being "elastic consciences," "elastic principles," "elastic spirits," etc. The most that can be said correctly is that the term "elastic" as applied to sectional bookcases and similar furniture. is somewhat suggestive of one of their characteristics. This, however, I think, was not enough to take the word out of the range of lawful appropriation as a trade-mark for sectional furniture such as the plaintiff manufactures, and which its predecessor in business first introduced to the public.

But if the word "elastic" were deemed to be so descriptive of these articles as to be inadmissible as a technical trade-mark, still, under the proofs, the word has acquired such a secondary signification, denoting sectional bookcases and like furniture of the plaintiff's manufacture, that the plaintiff should be protected in its use. It clearly appears that in the trade and with the general public the word "Elastic" has become distinctly associated with sectional bookcases and like articles manufactured by the plaintiff, indicating their origin. Philip H. Yawman, president of the Yawman & Erbe Manufacturing Company of Rochester, N. Y., the manufacturer of the sectional bookcases the defendants are selling, testifies that "the word 'Elastic' has for a long time been used and advertised prominently by the Wernicke Company and the Globe-Wernicke Company in connection with such sectional bookcases, and it has been thoroughly understood by me, and by the Yawman & Erbe Company, and, I believe, by the trade generally, that such word was used and claimed by the Wernicke Company, and later by the Globe-Wernicke Company, as being their trade-mark, and as distinguishing and identifying such goods of their manufacture." He further states that his company, and, he believes, all other manufacturers of sectional bookcases, have acquiesced in the exclusive right of the Wernicke Company and the Globe-Wernicke Company to the word "Elastic" in this connection. And by a number of affidavits made by other persons it is, I think, firmly established that in the trade and among the purchasers and users of such articles the word "Elastic" has come to mean, and does mean, when used in connection with sectional bookcases and similar furniture, goods manufactured by the plaintiff company.

Upon the proofs I am of opinion that the plaintiff is entitled to relief as well on the ground that the word "Elastic" was here rightfully appropriated as a trade-mark, as also upon the ground that the word has acquired a secondary meaning signifying goods of the plaintiff's manufacture.

Let a decree be drawn in favor of the plaintiff.