### VOGUE CO. v. BRENTANO'S et al.

(District Court, S. D. New York. November 10, 1919.)

1. TRADE-MARKS AND TRADE-NAMES ⬤⟿3(4)—DESCRIPTIVE NAME.

The word "Vogue," used as the name of a magazine, the contents of which relate, not only to fashions, but also to other matters of household interest, is not so descriptive as to preclude its use as a common-law trade-mark.

2. TRADE-MARKS AND TRADE-NAMES ⬤⟿59(3)—INFRINGEMENT BY USE OF "VOGUE" AS TITLE OF MAGAZINE.

On motion for preliminary injunction, the trade-mark "Vogue," as the name of a magazine, held infringed by the use of "La Vogue Parisienne" as the name of another publication.

In Equity. Suit by the Vogue Company against Brentano's and Arthur Brentano. On motion for preliminary injunction. Granted.

Macdonald De Witt, of New York City, for plaintiff.

Sackett, Chapman & Stevens, of New York City (Edward L. Stevens, of New York City, of counsel), for defendants.

KNOX, District Judge. For upwards of 27 years the plaintiff and its predecessors in interest have published a magazine by the name of Vogue. This periodical is issued twice a month, and has acquired an American circulation of more than 150,000 copies per issue. It is also published in two or more places abroad, where it has a circulation of 55,000 copies per issue.

The contents of the publication have chiefly to do with fashions of women's dress, and these fashions purport to represent the best and most up-to-date creations of those who design (principally in Paris) the ever-changing articles of women's dress. In addition, however, to the characteristic feature alluded to, the magazine gives space to other subjects, among which may be mentioned home decoration and architecture, art, and the stage. It carries a great variety of advertising, from which is derived a gross annual income in excess of $1,000,-000. The magazine is published upon pages of 10x13 inches in size, and the pages per issue vary in number from 160 to 208. The selling price is 35 cents per copy. The name or trade-mark of Vogue was registered February 7, 1893, again June 16, 1908, and finally May 20, 1919.

Very recently the defendants have begun the circulation within the United States of a publication bearing the title or name of La Vogue Parisienne. This publication differs materially in size and appearance from the magazine known as Vogue. The sale price of La Vogue Parisienne is $2 per copy, and it is the expressed intention of its pub-

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lishers to produce 10 issues per year. It relates entirely to fashions, and its pages are in the form of loose sheets, upon which are printed handsomely illustrated figures which purport to show the latest Paris fashions. Such reading matter as appears—and this is largely descriptive of the fashions portrayed—is in French. This periodical is intended to be, primarily, a trade publication, the appeal of which is directed almost exclusively to those engaged in the manufacture of women's wear. Upon the cover sheet there appears the following disclosure as to its publishers:

BRENTANO'S
Editeurs
37, Avenue de l'Opéra
Paris

Each of the fashion plates contained therein shows the name of the publication, together with the Paris, London, and New York addresses of the publishers. The name, however, of the latter does not appear on the plates.

With a recital of the foregoing facts, which recital might perhaps be somewhat more amplified as to detail, the plaintiff comes into court and asks, pendente lite, an injunction restraining the defendants from "in any way using or making use of the word, name, or designation Vogue as the title or part of title, or as the name or part of the name, of any magazine, periodical, or other publication, from using or making use of said word 'Vogue' as part of the title of the said periodical La Vogue Parisienne," and from selling the same under the title to which objection is made.

I think it may safely be said at the outset that aside from the title employed, or rather the name of the periodical, the elements of unfair competition, which usually are present in cases of this kind, are largely absent. Size, appearance, and general characteristics are so distinctive as that La Vogue Parisienne would not be purchased in the belief upon the part of the purchaser that he was getting the magazine Vogue. Nevertheless I am forced to the conclusion that, once the act of purchase is complete, a stranger who would see the plates contained therein, with no name thereon of the publishers, would, if already acquainted with the authority and quality of the fashions ordinarily published by the Vogue Company, come to the belief that the plates of La Vogue Parisienne were a more elaborate and ornate showing of Vogue fashions. I should say that such belief would be not only possible, but most probable as well.

It is suggested by the defendants that the plates of La Vogue Parisienne are obviously intended for framing, and it follows that when this is done any virtue there may be in the printing of "Brentano's, Editeurs," on the cover page, will cease to exist, and for all that will then appear the plates might well be conceived to be a colored supplement, as it were, of the magazine Vogue. But, however this may be, I assume I would not have jurisdiction of the case, were it not for the trade-mark feature of the litigation, and I proceed to a very brief consideration thereof.

[1] The validity of the trade-mark is objected to upon the ground that plaintiff has no exclusive trade-mark in the word "Vogue" at common law or under the 1893 registration. It is said in support of this proposition that "Vogue" is a descriptive name, and not a proper subject for an exclusive trade-mark (except as provided in the Trade Mark Act of 1905 [Act Feb. 20, 1905, c. 592, 33 Stat. 724]), but rather a word publici juris, incapable of exclusive pre-emption by any individual.

This to a degree is true, but I do not believe that the word "Vogue," as applied to the name of a magazine of the character of complainant's publication, is so descriptive as to preclude its use as a trade-mark at common law. In a sense it is more or less descriptive, but in the use complainant makes of the word I think it may be said to be arbitrary and somewhat fanciful. It is not necessarily descriptive of a magazine making an appeal such as Vogue does to the general public of the country. A perusal of the table of contents of the copies offered as evidence upon this hearing refutes, I think, the suggestion that Vogue is so descriptive in character as to make it impossible for a valuable property right in its use for the name of a publication to be acquired. As to the secondary meaning that has attached itself to the word by reason of its exploitation by the complainant, there can be no question.

[2] The discussion of the matters involved herein might be considerably extended, but entertaining as I do the belief that the equities here shown justify the issuance of a preliminary injunction, it will suffice to say that I think the case comes within the authority of Gannert v. Rupert, 127 Fed. 962, 62 C. C. A. 594, and the injunction may issue. Bond fixed at $5,000.