## ORANGE CRUSH CO. v. CALIFORNIA CRUSHED FRUIT CO.

(Court of Appeals of District of Columbia. Submitted January 16, 1924. Decided April 7, 1924.)

No. 1631.

1. **Trade-marks and trade-names and unfair competition ⬅43—Opposition by user of marks "Orange Crush" and "Lemon Crush" to registration of mark "Suncrush" sustained.**

     Where opponent to registration of mark "Suncrush" as applied to beverage had long used marks "Orange Crush" and "Lemon Crush" on goods of similar properties, and its retail sales had run into millions, opposition will be sustained, as opposer's marks were not descriptive, and even if they were they had acquired a secondary meaning, and concurrent use of applicant's mark would cause confusion.

2. **Trade-marks and trade-names and unfair competition ⬅3(4)—Descriptive marks not entitled to exclusive appropriation, but suggestive marks may be.**

     Under Trade-Mark Act (Comp. St. § 9490), descriptive marks are not susceptible of exclusive appropriation, but suggestive marks may be.

3. **Trade-marks and trade-names and unfair competition ⬅85(1)—Disclosure of trade secrets by user of mark not required.**

     While law does not permit making of false or misleading statements, it does not require disclosure of trade secrets by user of mark.

4. **Food ⬅15—Extensive sales without molestation evidence that product is not deleterious or misbranded.**

     Where product has had extensive sales, it may be assumed, in absence of molestation by government, that it is neither deleterious nor misbranded, within Food and Drugs Act (Comp. St. § 8717–8728).

5. **Trade-marks and trade-names and unfair competition ⬅3(1)—Mark acquiring secondary meaning protected, irrespective of original weakness.**

     Where mark has acquired secondary meaning, it will be protected, irrespective of any original weakness.

Appeal from the Commissioner of Patents.

Application for registration of a trade-mark by the California Crushed Fruit Company opposed by the Orange Crush Company. From a decision dismissing the opposition, opposer appeals. Reversed.

Henry B. Floyd, of Chicago, Ill., for appellant.

Arlon V. Cushman and John J. Darby, Jr., both of Washington, D. C., for appellee.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appellant, alleging that it had built up a very extensive trade in the beverages "Orange Crush" and "Lemon Crush," prior to the adoption by appellee of the mark "Suncrush," instituted an opposition proceeding against the registration of the latter term. The tribunals of the Patent Office, while ruling that the marks were applied to goods of the same descriptive properties, dismissed the opposition; the ground of the Assistant Commissioner's decision being that orange crush and lemon crush are aptly descriptive.

[1] Appellee, in its petition for registration, states that its mark is used on "nonalcoholic beverages made from citrus fruits in class 45, Beverages Nonalcoholic," and that this use has been continuous since September 20, 1920. We therefore will first determine the signification of "crush" at the time of its adoption by appellant.

From the lexicographers we learn that the verb "crush" means to press down or together, so as to force out of shape; to crush violently; bruise; mash, as to crush a hat by sitting on it; to break into bits by pressure; comminute, as to crush quartz. The meaning of the noun is a violent colliding pressure of two or more bodies; also the general breaking, bruising, or deforming caused by such pressure. The pressing or crowding together of any objects or persons, especially the pressure of a crowd, as at a public gathering; also the crowd itself; a jam. See Standard Dictionary and U. S. v. Graser-Rothe (C. C.) 164 Fed. 205.

It is in evidence that, prior to appellant's application of the term to a beverage, crushed fruits, such as crushed strawberries, raspberries, and the like, were well known, but they were regarded by the public as foods, and so classed by the Patent Office. Moreover, this understanding and classification was in harmony with the inherent signification of the term; that is to say, crushed fruit meant to the public a comminuted fruit. The evidence leaves no room for doubt that the term never had been applied to a beverage.

[2] The Trade-Mark Act (Comp. St. § 9490) prohibits the registration of a mark which consists "merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods." In this provision Congress evidently intended to draw a distinction between descriptive and merely suggestive marks. Marks of the former character, as we many times have declared, are not susceptible of exclusive appropriation, while those of the latter class may be. The difficulty is not so much in the statement of the rule as in its application to the facts of a particular case.

In the case under consideration, while orange crush, as applied to a beverage, was suggestive, it certainly was not descriptive. A person of average intelligence would not understand, when buying an orange crush drink, that he was getting a crushed orange. But, irrespective of the original signification of this mark, we are convinced that, long prior to the date of adoption by appellee of its mark, orange crush and lemon crush had acquired a secondary meaning, in that they had become associated in the public mind with appellant's products, and had

come to indicate clearly to the public the beverages of appellant. The evidence so clearly points to this conclusion that extended discussion is unnecessary, for in 1920 appellant's products were sold throughout the United States, hundreds of thousands of dollars had been expended in advertising, and retail sales had run into millions. Regardless of the question whether appellant's original advertising was sufficiently explicit, it is clear that, at a time prior to appellee's entry into the field, appellant's labels and advertising matter informed the public of the ingredients of the drinks to which the marks were applied. For example, the orange crush labels contained the following:

"A compound prepared from oil of orange, orange juice, citric acid and purest sugar syrup. Colored with harmless food colors."

[3-5] While the exact proportions of those ingredients are not given, neither are those of appellee. The law does not permit the making of false or misleading statements (Fed. Trade Com. v. Winsted Co., 258 U. S. 688, 41 Sup. Ct. 625, 65 L. Ed. 1172); but, on the other hand, it does not require the disclosure of trade secrets by the user of a mark. It may be assumed, from the extensive sales made by appellant without molestation from the government, that its product is neither deleterious nor misbranded, within the meaning of the Food and Drugs Act (Comp. St. §§ 8717–8728). Where a mark has acquired a secondary meaning, it will be protected, irrespective of any original weakness. Coca Cola v. Koke Co., 254 U. S. 143, 41 Sup. Ct. 113, 65 L. Ed. 189; Holeproof Hosiery Co. v. Wallach Bros., 172 Fed. 859, 97 C. C. A. 263.

Here the Patent Office has found, and in that finding we concur, that the marks of the two parties are applied to goods of the same descriptive qualities, within the meaning of the Trade-Mark Act. The evidence clearly indicates that the concurrent use of "Suncrush" by appellee has resulted in confusion in the mind of the public; but, aside from the evidence, we think it clear that confusion would be the inevitable result of such use. This is the familiar case in which one party, after the mark of another has become widely known, has attempted to appropriate the other's good will, which the law forbids. The opposition therefore should have been sustained, and accordingly the decision is reversed.

Reversed.