## CHICAGO PNEUMATIC TOOL CO. v. BLACK & DECKER MFG. CO.

### Patent Appeal No. 2300.

Court of Customs and Patent Appeals.
April 10, 1930.

Ira L. Nickerson, of New York City, for appellant.

John E. Cross, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This proceeding involves a petition by appellee for the cancellation of the trademark "Hicycle" registered by appellant under the Trade-Mark Act of February 20, 1905 (15 USCA §§ 81–109 as amended), in the United States Patent Office, the date of its registration being June 30, 1925, No. 200,387.

Appellant is a New Jersey corporation engaged largely in the manufacture of portable power tools, including electrical tools and devices. Petitioner is a Maryland corporation similarly engaged.

The history of the proceedings appears to be that appellant learned that appellee was using the words "High Cycle Tool" upon the name plates of certain of the tools of the latter's manufacture. These words were not registered, nor had appellee offered to register them. Upon obtaining the information as to their use by appellee, appellant on August 25, 1926, gave notice to the former to cease immediately the use of " 'High Cycle' and of all other words or expressions identical with or closely simulating the registered trade-mark of Chicago Pneumatic Tool Company, which may deceive or confuse the public as to the origin of the goods."

The Black & Decker Manufacturing Company thereupon filed its petition in the Patent Office, praying that the certificate of registration of the word "Hicycle" to Chicago Pneumatic Tool Company be canceled.

Petitioner alleged that the word "Hicycle" was a misspelled descriptive word, not entitled to registration for use on the goods for which it was registered, that it was not in any sense a trade-mark by which "the goods of the registrant may be distinguished from other goods of the same class" and that it was not entitled to registration under section 5 of the Trade-Mark Act (15 USCA § 85). It further alleged that it deemed itself to be injured and damaged.

Appellant admits that its registered trademark "Hicycle" is formed "by combining and phonetically spelling the words 'High Cycle,'" but denies that it is descriptive of its goods or of the character and quality thereof; insists that it was and is entitled to the registration, and denies that petitioner has been injured in its business as alleged.

The Examiner of Interferences sustained the petition, and upon appeal his decision was affirmed by the Commissioner. From this latter decision the matter is brought before us by further appeal.

Other allegations and assertions contained in the petition and answer are omitted from our statement because not material to the issue upon which the case must turn, viz. Is the word "Hicycle" a descriptive word, as applied to the goods involved, and so barred by the statute? It is conceded that the goods to which the respective words are applied are of the same descriptive properties, practically identical in some instances, and that "Hicycle" is a phonetic spelling of a combination of the two words "High" and "Cycle."

The pertinent portion of section 5 of the 1905 Trade-Mark Act (15 USCA § 85) reads:

"Provided, That no mark which consists merely * * * in words * * * which are descriptive of the goods with which they are used, or of the character or quality of such goods, * * * shall be registered under the terms of this subdivision of this chapter."

The goods upon which the respective words at issue are applied consists of articles such as portable drills, screwdrivers, socket wrenches, and grinding machines, so manufactured as to contain electrically operated motors for motivating the tool part, or machine. Appellant claims use of its word on the generator sets also.

The particular tools to which the respective words are applied are tools operating at a frequency in excess of 60 cycles per second.

In electrical nomenclature, a cycle, as defined by the Examiner of Interferences, who seems to have followed the definition given in a work on General Physics filed as one of petitioner's exhibits in the case, is that it "consists of two successive reversals of directions of the electromotive force or current."

Funk & Wagnalls' New Standard Dictionary defines "cycle":

"Elec. A full period of an alternating current, beginning at the zero line, going to maximum in one sense, returning to zero, going to maximum in the other sense, and then returning to zero."

What is known as "frequency" depends upon the number of cycles per second; that is, the "number of cycles is called the frequency."

To express the matter in common parlance, as best we can, we understand that the number of revolutions or the speed of operation of the tool, say of the drill, in these "Hicycle" and "High Cycle" devices, is dependent upon the frequency of the alternations of the electric current in the motors which constitute their propelling power, and this frequency depends upon the number of cycles per second—that is, upon the number of times per second which the current makes two successive reversals of direction. The electromotive force passing from the starting point to maximum in one sense, thence back by the starting point to maximum in another sense, and thence back to starting point, constitutes a cycle, and the number of cycles per second determines "frequency," which in turn governs the number of revolutions or the speed of the tool as it operates.

Appellant seems to have been first in the field in the manufacture of the particular articles to which the respective words are applied. It began to place its goods upon the market in the latter part of 1924 or early in 1925. Appellee began to place drills on the market in February, 1926, and other classes in March, April, and July, 1926, respectively. In each instance the actual development of the tools in their respective plants had preceded these respective dates; appellant being the earlier in development as well as in marketing.

Much testimony was taken in the case by both parties; portions of it being quite technical in character and dealing with the meaning of electrical terms and phraseology. Many exhibits were filed, and the case was ably presented by both briefs and oral arguments.

To review the evidence in minute detail would unduly lengthen this opinion. It has received our very careful study and analysis.

We think it may be taken as conceded that the phonetically spelled word "Hicycle" has whatever meaning attaches to the two words "High Cycle." If the phrase is descriptive, then the word is equally so and vice versa. In other words, if appellant was

entitled to register "Hicycle" it might have registered "High Cycle" also; they mean the same thing, and "Hicycle" is not a coined word except as it is phonetically spelled. We therefore treat the word and the phrase as being synonymous.

Appellant's insistence is that the evidence of the experts in the electrical art who were called shows that "High Cycle" is not synonymous with "High Frequency" and that the phrase from which it made its word is not, when "High" and "Cycle" are considered in the light of their respective definitions, descriptive of its goods or their qualities and characteristics. It insists that "not a single instance is in evidence by Petitioner of the use of the two words 'high' and 'cycle' together for any purpose, in any dictionaries, textbooks or technical literature"; that the testimony of petitioner's witnesses is contradictory; that there is some testimony that the words mean "high frequency," other testimony that they mean "high speed," and still other testimony that they indicate "danger"; and, the burden being upon appellee, it must clearly establish that they did mean one of these, or have some meaning, in order to prevail.

As we understand appellant's contention, it is that the words in fact have no meaning in the art in which it is engaged as applied to the tools and products to which it is applying "Hicycle," or at least that they had no descriptive meaning *"at the time of the adoption of the mark"* (italics quoted), and that, if they have any such meaning now, it results wholly from appellant's use, advertising, and explanations of them; that its mark was a word arbitrarily chosen after much thought and investigation by its officials, and with the feeling of certainty that, considering the true meaning of the words of which it is composed, it did not constitute a descriptive phrase, as applied to their products.

Appellant has produced technical testimony, and, by cross-examination of some of petitioner's witnesses, secured admissions which furnish ground for making the argument as we have tried to state it. It is not satisfactorily shown that, prior to its use of the registered mark, the words "High" and "Cycle" appeared together in any publication relating to the electrical art, or were used together in the electrical trade generally.

On the other hand, however, appellee produced testimony also by technical men, and likewise, upon cross-examination, drew admissions from one or more of the witnesses of appellant which strongly indicate that there is such a degree of similarity in meaning between "High Frequency" and "High Cycle" as to justify the contention that among purchasers of the articles, and generally among those not highly educated in electrical terms, nor skilled in the details of the electrical art, the phrases, as applied to the goods in question, are synonymous in meaning. This evidence is quite strong, we think, in indicating both a technical and common understanding of the meaning of the words which fully comports with descriptiveness.

Concededly, the words "High Frequency" would be descriptive applied to the tools here involved, and could not be registered as a trade-mark for use upon them. According to all the expert testimony in this record, the "Cycle" has a direct relation to the "frequency," at least to the extent that frequency depends upon the number of cycles per second.

The Commissioner of Patents said:

"The publication 'High-Speed Motors in the Wood-Working Industry' by the Westinghouse Electric and Manufacturing Company, reprinted from a publication of May, 1922, in 'The Wood-Worker' seems conclusive that the trade understood the words 'high cycle' to indicate an electrically driven rotary tool or device whose speed is dependent upon the frequency or the number of cycles per second of the alternating current by which it is driven."

The Examiner of Interferences, an expert of the Patent Office, had, in his decision, made a similar finding from this publication which is one of petitioner's exhibits in the case.

Appellant insists these findings were erroneous because the publication does not show the words "High" and "Cycle" to be used together. With this contention we cannot agree. It is not necessary that they should have been so specifically arranged to lead to the conclusion which the tribunals of the Patent Office drew, and we agree with the latter.

The word "High" has long had a use in connection with various words incident to the electrical art, and, when so used, as well as when used in common parlance, it has a well-understood meaning. The Examiner said:

"Such expression as high frequency, high current, high voltage, high tension, high resistance, etc., are common in the electrical field and convey the meaning that the phenomena or condition in connection with

which it is used is more than, or above, the customary or average."

The word "Cycle" has long had its place in electrical nomenclature. When the word "High" is applied to it bearing in mind the meaning of "High" when used in the electrical field, it would surely convey the meaning that the cycle phenomena "is more than, or above, the customary or average."

As has been stated, the electrical tools involved are manufactured to operate at a speed which is occasioned by a frequency produced as the effect of alternations that constitute more than 60 cycles per second which theretofore had been the ordinary cycle maximum in the electrical tool art.

It seems to us that to hold with appellant in this case would require the application of a higher degree of technical refinement than we think the Trade-Mark Registration Act contemplates. We cannot doubt that whatever distinction those having highly specialized learning as to electrical technique might be able to draw by strict construction of electrical terms, the phrase "High Cycle," as applied to these motor driven tools, does convey to the public generally a definite meaning distinctly descriptive of the tools. The relation between the cycle of the current and the revolution or operation of the tool or mechanism is too direct and immediate, in our view, to admit of any other conclusion. We think it is more than suggestive and amounts to descriptiveness.

Careful thought has been given to appellant's contention that the matter must be determined upon the meaning, or lack of meaning, in the word registered at the time of its registration, and that it may not be decided upon the meaning it has come to have as a result of appellant's teachings.

We do not think this argument applicable here, because, while even if it be conceded that the words had not been used together prior to its appropriating them, nevertheless their meaning as used separately in the electrical art was the same then as it is now, and their descriptive character appeared and became fixed and manifest when they were brought together.

Numerous authorities support the proposition that words descriptive of the use and characteristics of goods are not the proper subject for technical trade-mark registration. Among others are Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 31 S. Ct. 456, 55 L. Ed. 536; William R. Warner & Co. v. Eli Lilly & Co., 265 U. S. 526, 44 S. Ct. 615, 68 L. Ed. 1161; In re Packard Motor Car Co., 46 App. D. C. 555; Ex parte Cutler Hammer Mfg. Co., 354 O. G. 499.

Both tribunals of the Patent Office concurred in the decision in this case. Quite naturally and properly this court in all cases gives great weight to their findings, and this is especially true upon questions so technical as that here involved of which the Examiner in particular is charged with and possessed a high degree of special knowledge.

We find no error in the decisions, and that of the Commissioner is affirmed.

Affirmed.