## BARBER–COLMAN CO. v. OVERHEAD DOOR CORPORATION.

Patent Appeal No. 3158.

Court of Customs and Patent Appeals.
May 29, 1933.

Lincoln B. Smith, of Chicago, Ill., for appellant.

Otto F. Barthel, of Detroit, Mich. (T. L. Meade, Jr., of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents, reversing a decision of the Examiner of Trade-Mark Interferences, and dismissing appellant's petition for cancellation of appellee's trade-mark registration, No. 250,386, issued December 11, 1928, of the words "Over Head Door," which mark is registered for use on garage doors, the word "Door" being disclaimed.

The door manufactured by both appellant and appellee is that character of garage door which consists of horizontal sections, hinged together, and sliding in grooves at each end upward and along the curved grooves and over the top of the door opening, so that the door, when opened, lies in a horizontal position overhead. The construction of the doors is substantially shown in the ordinary roll top desk.

In this court, appellant raises two issues: First, that the mark "Over Head Door" is

merely descriptive of the goods to which it is applied; second, that appellee, at the time of registration, did not show a trade-mark use of the term in interstate commerce prior to filing its application for registration—that appellee, at the time of registration, relied, for a showing of a trade-mark use, upon a label or plate which was merely the name and address of appellee corporation.

Appellee contends that the second question cannot be raised here, since it formed no part of the ground for cancellation in appellant's petition and was raised for the first time before the Examiner of Trade-Mark Interferences, and was not passed upon by the Commissioner. In view of our conclusions herein, it is not necessary for us to consider the second contention of the appellant. We will confine ourselves entirely to the question of the descriptive character of the mark.

In this court there is no question raised as to appellant's interest and its right to petition for cancellation.

The registrant, appellee, has been engaged solely in the door business since 1921, and has used the term "Overhead Door" in connection with its business from that date continuously thereafter, and, in 1930, its sales aggregated at retail over one and a half million dollars, and during its use of the term as a trademark it claims to have spent one million dollars in advertising and sold approximately twenty million dollars worth of doors, has distributed millions of pieces of advertising literature, has an organization of 383 distributors in the United States, and has distributors in foreign countries.

The appellant, an Illinois corporation, manufactures a number of different articles, including garage doors of the same type as those of appellee. It advertises its doors by use of such expressions as being of the "overhead type," "rolls back overhead," "overhead—on the ceiling out of the way," and "rolls overhead and out of the way." It is shown that it began the manufacture of such doors and use of such terms in advertising some time in 1930; that its use of the term "overhead" in describing its merchandise has been objected to by appellee. Appellant states, and, there is some evidence to support the statement, that objection is made to listing the name of appellant in telephone directories under the heading "Overhead Doors"; that the appellee in its advertisements repeats the statement that "there is but one 'Overhead' door," and that that overhead door is manufactured and sold by appellee.

The appellee contends that its registered mark is not merely descriptive of its garage doors, but might be regarded as suggestive. It refers to the decision of this court in the case of Van Camp Sea Food Co. v. Alexander B. Stewart Organizations, 50 F.(2d) 976, 18 C. C. P. A. 1415, in which descriptive and suggestive trade-marks were discussed. It contends that the term "door" has two meanings, one relating to the opening and the other to the closure; that the term "Overhead Door," as applied to a door, is not descriptive, since, if referring to an opening overhead, it would not describe it for the reason that such overhead openings with closures are properly called hatches, scuttles, lids, or trap doors; that the door, while serving as a door, is not overhead, and that the term, therefore, does not describe the mode of operation or any characteristic of the article. Appellee claims to have originated the term and urges here that the record does not show that the word "overhead" was ever applied to a garage door, prior to its adoption by the appellee, and, in substance, that, by reason of its extensive advertisement and great commercial success, its competitors are now flocking to the feast and enjoying an unearned reward.

The record shows that, in three United States patents, the term "overhead," was used with relation to doors. In patent No. 756,609, to Erwood, concerning the door it is said: "Which can open upward and be disposed of overhead." In patent No. 1,275,591, to Ogden et al., it is stated that the door is "adapted to swing overhead in opening with a minimum floor clearance." In patent No. 1,305,838 to Shur, the door is described as "an overhead, slidable openwork door."

Appellee contends, and the Commissioner of Patents seemed to regard this point as material, that, prior to the date of adoption of the term by the appellee, doors of the character involved were not known by the name "overhead." Appellee argues that the comma should be omitted between "overhead" and "slidable" in the last referred to patent, and that the term "overhead" modified "slidable" rather than "door." While appellee has not expressly contended that the record before us shows a secondary meaning for the term, its argument and its citation of certain authorities, which it deems controlling, would seem to suggest such a contention, in effect.

It is clear to us that the term "overhead," as applied to garage doors of the character involved, is descriptive within the prohibition of the registration statute involved. Webster's New International Dictionary (1932) defines the adverb "overhead" as

"above one's head; aloft," and the adjective "overhead" as "operating or situated above or overhead." It is one of the features of this kind of door that, when it is opened, it is overhead, and we have little sympathy with the fine distinctions urged here, which, if given controlling effect, would give to the alleged owner of said term the presumptive exclusive right to use such term in connection with its dealing in this kind of door.

If it were conceded that appellee was the first to use the adjective "overhead," as applied to this character of door, it would make little, if any, difference in the decision of this case. Such fact might be a proper consideration in determining the meaning the term suggests, and its applicability to the merchandise, but certainly it would not be controlling. If the term is descriptive of the merchandise, the public has a right to use it at any time, since it is well settled that such a term cannot be exclusively appropriated by anyone.

As bearing upon the question of descriptiveness or suggestiveness, and as supporting its position here, the appellee has cited and discussed the following cases, the subject-matter of which will be indicated with the citation: O'Rourke v. Central City Soap Co. (C. C.) 26 F. 576 ("Anti-Washboard Soap" on soap); Stoughton v. Woodard et al. (C. C.) 39 F. 902 ("Cough Cherries" on a cherry flavored confection, medicated for coughs and colds); Selchow v. Baker, 93 N. Y. 59, 45 Am. Rep. 169 ("Sliced Animals" applied to a game); Hiram Holt Co. v. Wadsworth et al. (C. C.) 41 F. 34 ("Lightning" for hay knives); American Fibre-Chamois Co. v. De Lee et al. (C. C.) 67 F. 329 ("Fiber Chamois" on dress interlining); Wells & Richardson Co. v. Siegel, Cooper & Co. (C. C.) 106 F. 77 ("Celery Compound" for medicinal preparation); Williams et al. v. Mitchell et al. (C. C. A.) 106 F. 168 ("Carroms" for a board for playing games); Globe-Wernicke Co. v. Brown et al. (C. C.) 121 F. 185 ("Elastic" on sectional bookcases or filing cabinets); Nashville Syrup Co. v. Coca Cola Co. (C. C. A.) 215 F. 527, Ann. Cas. 1915B, 358 ("Coca Cola" for a drink); Vogue Co. v. Brentano's et al. (D. C.) 261 F. 420 ("Vogue" for a magazine); United Lace & Braid Mfg. Co. v. Barthels Mfg. Co. (D. C.) 221 F. 456 ("Beaded" on shoe lace tips); Orange Crush Co. v. California Crushed Fruit Co., 54 App. D. C. 313, 297 F. 892 ("Orange Crush" for a drink); and In re Irving Drew Co., 54 App. D. C. 310, 297 F. 889 ("Arch Rest" on boots, shoes, and slippers).

We will not discuss the foregoing cases except to say that in each instance they are easily distinguishable from the case at bar. In most instances the trade-marks only suggested qualities or characteristics of the articles, and were in no sense descriptive of the same. For instance, "Arch Rest" does not describe a shoe, but is suggestive of something in connection with the arch of the foot. The mark in the Coca Cola Case, supra, was registered under the ten-year clause of the Trade-Mark Act, and under said clause descriptiveness was not a bar to registration. In the "Celery Compound" Case, supra, the court said: " * * * The facts here shown establish the contention that they [Celery Compound] have never been used in a strictly descriptive sense, but have acquired a secondary meaning. * * *" It is stated by appellant that in that case the compound contained no celery as an ingredient. The opinion does not so state, but if in fact it was a celery compound or compound containing celery, and this was the only consideration in the case, it would be difficult to conclude that the term was not descriptive within the prohibited degree.

It will not be necessary for us to consider all the numerous cases cited by appellant. Some of them, we think, are directly in point and will be briefly discussed.

In Chicago Pneumatic Tool Co. v. Black & Decker Mfg. Co., 39 F.(2d) 684, 17 C. C. P. A. 962, "Hicycle," as a trade-mark for electrically operated tools, was regarded as offensively descriptive, and the Commmissioner's decision canceling the trade-mark was affirmed.

A case very much on all fours with the case at bar is In re Autographic Register Co., 39 F.(2d) 718, 17 C. C. P. A. 1044. This court there held that the word "Autographic" as applied to manifold registers and parts and supplies for the same, was descriptive of the character or quality of the goods, and pointed out that it was used by at least a dozen inventors to describe similar articles which had been patented.

A case quite in point is Hercules Powder Co. v. Newton (C. C. A.) 266 F. 169, 173. There the Circuit Court of Appeals for the Second Circuit had the question of the registrability of the trade-mark "Infallible" under consideration. It held that the term "merely descriptive" in the Trade-Mark Act of 1905 (15 USCA § 85) meant "only descriptive," and that the trade-mark "Infallible" was descriptive and, therefore, not registrable. The court there laid down the following test of descriptiveness: " * * * Does the

suggested trade-mark word or device, with the environment proposed for it, convey by its primary meaning something which others may employ with equal truth and equal right for the same purpose?"

It cited numerous authorities where trademarks were held invalid by reason of their descriptive character, and referred to other marks which were regarded as only suggestive and, therefore, valid. The court said: " * * * An explosive powder marked as 'Hercules' would be suggestive, and no person other than its maker could with equal right and equal truth call his powder by that name or any derivative therefrom; but 'Infallible' is merely descriptive, because it has no association with the Hercules Company, other than that acquired by a long course of business nomenclature."

As apropos to the issue at bar, the court further said:

" * * * It is also reasonably inferable from this record that plaintiff feels unjustly treated by refusal to register a word which it has exclusively and successfully used as a trade-mark for more than 10 years, but not for that decade which alone secures protection under the 10-year clause of the present statute. We appreciate the hardship, and are quite aware of the international trade-mark difficulties which beset the path of the American trader in foreign parts, who has not secured registration in his own country. But the remedy is with the Congress, and neither the Commissioner of Patents nor any court can change the accepted law on which the Trade-Mark Act of 1905 was built.

"It is not possible under the present act for a citizen to choose as his trade-mark something invalid by general law, use it without opposition long enough to make a showing of trade repute and commercial success, derive from that success 'secondary meaning' for his mark, and then apply for registration. There is much to be said in favor of a registration law which would give legal and governmental sanction to any mark which it could be shown the public had accepted. Such a system would enable this plaintiff to prevail; but Congress must first create it."

The decision of the Supreme Court of the United States in the case of Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 S. Ct. 270, 45 L. Ed. 365, is unusually pertinent to the facts at bar and the contentions of appellee. The court there held that words which were merely descriptive of the place where the articles were manufactured could not be monopolized as a trade-mark, and that the word "Elgin" was such a term, and that, if it had acquired a secondary meaning in connection with its use, protection from imposition and fraud would be afforded by the courts, but that, notwithstanding this fact, its descriptive or geographic character rendered it unregistrable as a trade-mark. Applying the Elgin Case to the contentions of appellee, if its word has acquired a secondary meaning, the remedy for unfair competition or perfidious dealing by those who seek to profit on appellee's good will may be afforded in jurisdictions other than this, but, since the mark is descriptive of the goods, it should not have been registered. Congress, by the provision for a cancellation proceeding in the Trade-Mark Act of 1905 (15 USCA § 93), has provided a remedy for those who deem themselves injured by such a registration.

Moreover, this record affords no application for the principle relating to secondary meaning announced in Le Blume Import Co. v. Coty (C. C. A.) 293 F. 344, 353. In that case, the word "L'Origan" was held to mean, in the United States, Coty's particular production and not the fragrance of a particular plant and flower. In that case the French word "L'Origan" had no significance in America except to point to the origin of the goods. We think the term "Overhead" describes a characteristic, not only of appellee's door, but of doors manufactured by appellant and others. Clearly, therefore, it designates more than origin.

In Delaware & H. Canal Co. v. Clark, 13 Wall. 311, 323, 20 L. Ed. 581, the trade term "Lackawana Coal" was under consideration and the court said: " * * * No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection. * * * "

In the instant case, irrespective of what rights appellee may have against those who by unfair methods attempt to palm off their goods as the goods of appellee, it seems clear that the registrant should not have the right to appropriate an adjective in common use, which in our minds is descriptive of appellee's garage doors, and by registration acquire the

presumptive exclusive right to the use of the term in connection with the sale of such merchandise. The mere fact that it has made a great commercial success in using the term, and that others are profiting by its expenditure of money and energy in familiarizing the public with the term, is no justification for a continuation of the registered status of the trade-mark involved.

One phase of the argument before this court led to the conclusion that, if the term was not descriptive of a garage door, it was misdescriptive, and, therefore, deceptive under the following decisions: In re Bonide Chemical Co., 46 F.(2d) 705, 18 C. C. P. A. 909; In re Brunswick-Balke-Collender Co., 56 F.(2d) 890, 19 C. C. P. A. 1055; Re Excelsior Shoe Co., 40 App. D. C. 480. We do not think it necessary to consider this phase of the case in view of our conclusions above.

The Examiner of Trade-mark Interferences properly sustained the petition for cancellation and properly recommended that the registration be canceled, and the decision of the Commissioner of Patents is reversed.

Reversed.

LENROOT, Associate Judge (concurring).

I concur in the opinion of the majority, but in my judgment it clearly overrules the case of In re Plymouth Motor Corporation, 46 F.(2d) 211, 18 C. C. P. A. 838, which holds that, if a geographical term has a secondary meaning, it is more than merely geographical, and is therefore registrable. I dissented from the majority opinion in said Plymouth Case, and I believe that the majority opinion in the case at bar should expressly overrule said case.